FRANKLIN COUNTY, APPELLEE, v. WILT & POLLY, APPELLANTS.

FILED JUNE 10, 1910.    No. 16,333.

Mandamus: CONSTRUCTION OF BRIDGE BY OWNER OF MILL-RACE. Section 6162, Ann. St. 1909, does not apply to a natural person, the owner of a private mill and appurtenances constructed entirely upon his own land in 1873, whose raceway is intersected by a highway laid out in 1880.

APPEAL from the district court for Franklin county: HARRY S. DUNGAN, JUDGE. *Reversed.*

*W. C. Dorsey* and *Bernard McNeny,* for appellants.

*George J. Marshall, contra.*

ROOT, J.

This is a mandamus proceeding to compel the respondents to construct a bridge at the intersection of their mill-race and a highway. The writ was issued, and the respondents appeal.

The facts, in so far as they are disclosed by the record, are undisputed. The raceway in question was constructed by the respondents' grantor in 1873 upon premises owned by him in fee simple. In 1880 a highway was laid out so as to intersect said raceway. A bridge subsequently constructed by the county in the highway and over the raceway has been continuously used by the public, but is now out of repair.

In 1887 the legislature passed an act entitled "An act to compel railroad corporations and others to make and keep in repair crossings." Laws 1887, ch. 73. (Ann. St. 1909, sec. 6162 *et seq.*) Section 1 of that act is as follows: "Any railroad corporation, canal company, mill owner, or any person or persons who now own, or may hereafter own or operate, any railroad, canal, or ditch that crosses any public or private road shall make and keep in good repair good and sufficient crossings on all such roads, including all the grading, bridges, ditches, and culverts that may be necessary, within their right of way."

Counsel for the respondents argue that the order of the district judge deprives their client of his property without due process of law, whereas the relator's counsel urges that the judgment compels the performance of a duty imposed by the legislature in the exercise of the

police power. There is nothing in the record to indicate that the mill to which the raceway is appurtenant is a toll mill, that any right exercised in operating it was acquired by the exercise of the right of eminent domain, or that the respondents' business is affected in any manner with a public interest. Prior to the date the mill and its appurtenances were constructed and a water right was vested in the respondents' grantors, the legislature had not announced the policy of the state to dedicate all unappropriated water in the natural streams to the use of the public, nor had it vested persons, natural or corporate, with the power of eminent domain with respect to the appropriation and application of water for all beneficial purposes. If we adopt the argument of relator's counsel we shall hold that the legislature had power, and intended, to compel a natural person not exercising a franchise or conducting a business affected with a public interest, and whose property rights vested years before a highway was laid out over his premises and prior to the enactment of the statute, to construct and keep in repair a bridge forming part of the public way where it intersects his raceway. Counsel for the relator suggests that in *State v. Chicago, B. & Q. R. Co.*, 29 Neb. 412, this court held the statute to be a valid exercise of the police power, and that it applies to highways laid out across a railway subsequent to its construction. It will be noticed that Judge NORVAL, in his well-reasoned opinion in that case, bases his conclusion upon the right of the legislature to impose burdens upon public service corporations in addition to those specifically mentioned in their charters, but reasonably necessary for the protection of their patrons. The decision is supported by sound reason and excellent authority. *Chicago, B. & Q. R. Co. v. Chicago,* 166 U. S. 226.

It is a matter of common knowledge that every part of a roadbed used for railroad purposes must be properly constructed and carefully maintained to insure the safety of persons upon the carrier's moving trains, and that to

permit the highway authorities to assume jurisdiction over the construction and reparation of railway crossings would invite disaster and death.   But at the intersection of a raceway and an ordinary highway no such condition obtains.   Highways must, and frequently do, cross natural streams.   There is no danger peculiar to the use of a bridge spanning an artificial watercourse that does not apply to a like use of a viaduct over a natural stream.   The public authorities are better equipped to construct and repair bridges than are individual millers and ditch owners, so that the reasoning of Judge NORVAL does not apply to the instant case.

Independently of the statute, the miller's liability in case his raceway crosses a highway laid out before the raceway is constructed is well established.   In that event he should reunite the way by the construction of a bridge and thereafter keep it in repair.   *City of Lowell v. Proprietors of Locks & Canals,* 104 Mass. 18; *Eyler v. County Commissioners,* 49 Md. 257; *Woodring v. Forks Township,* 28 Pa. St. 355; *President and Trustees of West Bend v. Mann,* 59 Wis. 69; *State v. Lake Koen N., R. & I. Co.,* 63 Kan. 394; *Trustees of Burton Township v. Tuttle,* 30 Ohio St. 62.   But if the highway is laid out over an artificial waterway theretofore constructed, the proprietor of the canal, unless bound by the terms of a franchise or private contract, is under no duty to construct or repair a viaduct in the highway and over the waterway.   *Perley v. Chandler,* 6 Mass. *454; *City of Oswego v. Oswego Canal Co.,* 6 N. Y. 257; *Morris Canal & Banking Co. v. State,* 4 Zab. (N. J.) 62; *City of Denver v. Mullen,* 7 Colo. 345.   If the legislature, under the circumstances of this case, may force the respondents to construct the bridge in question, it can compel the proprietor to construct and maintain bridges over creeks and other natural watercourses upon his premises should the public authorities lay out and open a public highway through his land so as to cross those streams, and it may further impose upon him the expense of grading and keeping in repair the

highway wherever it traverses his land and without regard to special benefits bestowed. It must be remembered that, if those burdens are properly laid in the exercise of the police power, the landowner cannot, as a matter of right, demand reimbursement. We shall not say that the legislature may or may not provide by general statute that such burdens may be imposed upon the individual, but, if the public authorities assert that the landowner owes that duty, they should cite a statute that, fairly considered, leaves no reasonable doubt in the mind concerning the individual's obligation.

It will be noticed that the act commands the persons therein described to construct and repair crossings "within their right of way." Giving effect to all of the language employed by the lawmakers, it would fairly seem that the statute does not refer to the owner of a private mill whose title to the land through which his raceway is excavated is in fee simple, subject to a mere easement in favor of the public. The relator therefore has not made out a case against the respondents.

The judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED.