STATE, EX REL. LOUIS HUTTER, SR., APPELLEE, V. PAPIL-
LION DRAINAGE DISTRICT ET AL., APPELLANTS.

FILED SEPTEMBER 25, 1911. No. 17,177.

Highways: DUTY OF DRAINAGE DISTRICT TO CONSTRUCT CROSSINGS. It
is the duty of a drainage district under the provisions of sec-
tions 110 to 113, inclusive, ch. 78, Comp. St. 1909, to make and
keep in good repair good and sufficient crossings wherever the
drainage ditch crosses the streets of an incorporated city or
village.

APPEAL from the district court for Sarpy county:
ALEXANDER C. TROUP, JUDGE. *Affirmed.*

*Courtright & Sidner,* for appellants.

*James T. Begley, contra.*

LETTON, J.

This is an appeal from a decree awarding a writ of
mandamus against the Papillion Drainage District re-
quiring it to build and maintain bridges across its ditch
where the same crosses certain streets in the village of
Papillion.

The relator, Louis Hutter, Sr., pleaded and proved
that by reason of the excavation of the ditch he was pre-
vented from having access by way of Addition street to
his land lying to the south of the ditch, whereon his
slaughter-house was situated, and prayed that a writ of
mandamus be issued compelling the respondent to build
a bridge or crossing on that street. The respondent's
answer admitted the existence of the street and its refusal
to build a bridge, pleads that it acquired a right of way
by condemnation across the streets of the village and has
paid damages to the village therefor. It is further pleaded
that it is not feasible or practicable to build bridges
across the streets for the purpose of connecting the vil-
lage with the territory to the south, but that the "reason-

able, practicable and economical remedy" is to lay out a new street from Washington street, where a bridge now exists, along the south margin of the ditch to connect with Addition street. After the answer was filed the village of Papillion filed a petition in intervention, setting forth substantially the crossing of four streets, including Addition street, by the ditch, the obstruction of the streets thereby, and the necessity for bridges, and praying that the respondent be compelled to erect approaches and bridges on each of the streets. The answer to this petition in intervention is substantially the same as to that of the relator. The court found that the streets had been obstructed, that bridges were necessary, and that it was the duty of the respondent to erect sufficient crossings over the ditch at the points named. It further found that the allegation that a more practical remedy was to lay out a new street was immaterial and constituted no defense. From this judgment respondent appeals.

The appellant contends that the statute (Comp. St. 1909, ch. 78, secs. 110-113) by its terms does not apply to drainage districts, and that the title is not sufficiently broad to include such districts. The title reads, "An act to compel railroad corporations and others to make and keep in repair crossings." Section 110 provides: "Any railroad corporation, canal company, mill owner, or any person or persons who now own, or may hereafter own or operate, any railroad, canal, or ditch that crosses any public or private road shall make and keep in good repair good and sufficient crossings on all such roads, including all the grading, bridges, ditches, and culverts that may be necessary, within their right of way." It is argued that under the doctrine of *ejusdem generis* the words, "and others," apply to corporations or persons of a similar nature to railroads, and that, since we have held that a drainage district is of a purely public and administrative character, it is not of a similar character to a railroad corporation. It is further said that a drainage district does not "own and operate" a ditch, and that the

title and the language of the act show that it was only intended to apply to profit-sharing corporations. This argument is ingenious, but hardly convincing. We think it plain that the intention of the legislature was to place in the same class "railroad corporations and others" engaged in similar acts with reference to the highway; that is, other persons and corporations "who now own, or may hereafter own or operate, any railroad, canal, or ditch that crosses any public or private road." The classification is based, not upon the manner of the organization of the corporation or whether created for pecuniary profit or not, or whether the corporation is public or private, but is based upon the effect that its operations must necessarily have upon the highway. It merely imposes a duty upon whoever—whether natural or corporate individual does not matter—obstructs a highway by the building of a railroad, or the excavation of a canal or ditch, to restore the way to a condition suitable for travel. We think that a drainage district is clearly one of the "others" named in the title.

The principal argument of appellant is that, since a drainage district is formed for public benefit, and not for private gain, it should not be compelled to spend its funds in the building of bridges; that it can only raise the necessary funds to carry on its operations by virtue of special assessments, which can only be levied to the extent of special benefits conferred upon each tract of land, and that in many cases, if the cost of building bridges were to be added to the cost of the ditch, the total expense would exceed the special benefits conferred, and that to so hold would defeat the beneficent purpose of the law permitting the organization of drainage districts. We think such a result may perhaps be possible, but it hardly seems probable, and, even if so, the legislature should be appealed to for relief, and not the courts. This statute has previously been considered in this court in the following cases: *State v. Chicago, B. & Q. R. Co.*, 29 Neb. 412; *Burlington & M. R. R. Co. v. Koonce*, 34 Neb. 479;

*State v. Farmers & Merchants Irrigation Co.*, 59 Neb. 1; *Missouri P. R. Co. v. Cass County*, 76 Neb. 396. The opinions in these cases plainly indicate the view this court has heretofore taken as to the validity of the law. It was pointed out by Judge ROOT in *Franklin County v. Wilt & Polly*, 87 Neb. 132, that, independent of a statute, the duty of one who excavates a canal across a highway to restore the way by the construction of a bridge and crossing seems to be well established. See cases cited in the opinion, also *Cleveland v. City Council*, 102 Ga. 233, 29 S. E. 584; *Town of Conewango v. Shaw*, 52 N. Y. Supp. 327. The district court held that the plea that· another route was more feasible for public travel was no defense, and in this no mistake was made. It was not for those who invaded the streets to say to the village, "There is a better way elsewhere." Probably by negotiation in a friendly spirit the necessity of bridges at the points specified might be done away with, but legal rights are in question here, and not matters of accommodation. We see no reason to say that the statute does not apply to the facts in this case, or that it is invalid.

The case of *Heffner v. Cass and Morgan Counties*, 193 Ill. 439, cited and relied upon by respondent is not in point. In that case it was held that a statute which imposed upon a county the duty of replacing a bridge removed by the commissioners of a drainage district did not violate the constitutional provision that property shall not be taken for public use without compensation, for the reason that county bridges were public, and not private, property. The court properly held that, since the legislature had power to provide by law for the construction, control and disposition of public bridges, it had the power, if it became necessary for a public purpose to widen a stream and to build a new bridge, to require the public road authorities instead of the drainage officers to construct the bridge. But, even if this case were in point, some of the language in the opinion has been modified by the later cases of *Commissioners of Union Drainage*

*District v. Commissioners of Highways,* 220 Ill. 176, *Morgan v. Schusselle,* 228 Ill. 106, *Commissioners of Highways v. Commissioners of Lake Fork Special Drainage District,* 246 Ill. 388, and *Bradbury v. Vandalia Levee and Drainage District,* 236 Ill. 36, in which cases the Illinois court takes substantially the same view of a like statute that we take in this case.

The legislature has control of the public highways, and also has control of the manner of construction of public ditches; it has the right to say as to which of the respective public bodies concerned shall construct a bridge where a ditch crosses a highway.

The judgment of the district court awarding the writ is correct, and is therefore

AFFIRMED.

SEDGWICK, J., not sitting.