RICHARDSON COUNTY, EX REL. MAURICE SHEEHAN ET AL., APPELLEES, V. DRAINAGE DISTRICT NO. 1, APPELLANT.

FILED JANUARY 16, 1913. No. 17,661.

1. **Drains:** HIGHWAY CROSSINGS: DUTY TO MAINTAIN. Under section 23, art. IV, ch. 89, Comp. St. 1911, drainage districts organized under that article are charged with the duty of restoring a public highway which they cross "to its former state as near as may be, or in a sufficient manner not to have impaired unnecessarily its usefulness." *Held,* That this provision does not operate to relieve such districts from the duty imposed by common law and by section 110, art. I, ch. 78, Comp. St. 1911, to "make and keep in good repair good and sufficient crossings on all such roads."

2. ———: ———: BRIDGES: DUTY TO MAINTAIN. That where a new channel has been made by the drainage district for a stream which has been bridged by the public authorities, if the new channel and bridge relieve the county of the burden of maintaining the old bridge, the new bridge should be maintained by the public, and not by the drainage district.

APPEAL from the district court for Richardson county: JOHN B. RAPER, JUDGE. *Affirmed.*

*Kelligar & Ferneau* and *A. R. Keim,* for appellant.

*A. E. Gantt, E. Falloon* and *C. F. Reavis, contra.*

*Courtright & Sidner, amici curiæ.*

LETTON, J.

This was an application for a writ of mandamus to compel the respondent to erect and maintain suitable bridges and approaches at certain specific localities in Richardson county where the ditches dug by the respondent cross public roads. It is alleged that certain of the bridges built by respondent are too short, that others are out of repair and that the approaches are unsafe.

The answer to the alternative writ "admits that among the duties enjoined by law upon this respondent was to provide suitable bridges and approaches thereto in the highways where the ditches of respondents intersect the said highways, but denies that any law of the state of Nebraska enjoined upon said respondent the duty of maintaining said bridges and approaches thereto after the same have been duly installed by said respondent." It also denies that the bridges constructed by it were too short to span the openings, and alleges that, if the approaches and bridges are now impassable, it is due to flood conditions.

The court found (to quote from appellant's brief) "that the Moritz and Preston bridges were properly constructed by the drainage district; that these bridges were put out of repair by an unprecedented flood; that their consequent want of proper condition for public travel was not due to any omission, fault, or neglect on the part of the drainage district; and   *   *   *   the duty of replacing the same in proper condition for public use rested, under the law, upon the drainage district." The appellant admits that the findings of fact made by the court

are supported by sufficient evidence, but denies that the conclusion of law was correct.

A brief has been filed by *amici curiæ* requesting the court to re-examine the question decided in *State v. Papillion Drainage District*, 89 Neb. 808, 90 Neb. 477. On account of the importance of the question involved, we have devoted much time to a re-examination of the whole subject.

In this state there are a number of separate acts providing for drainage. How far these refer to roads will now be examined. The first act in point of time was passed in 1873, and is now designated as article I, ch. 89, Comp. St. 1911. The only reference to roads in that act provides that the counties must pay the amount of benefits the highway will receive, if any, toward the cost of the ditch. Article II of this chapter provides for drainage by incorporated companies composed of owners of the lands affected, and was passed in 1877. Laws 1877, p. 160. No provision is found in this act referring to roads. Article III, passed in 1911 (laws 1911, ch. 142), is substantially the same as the act of 1873 with reference to public highways. There are no specific provisions in any of these acts allowing ditches to cut or cross public highways. Article IV, passed in 1905 (laws 1905, ch. 161), also provides that railways and highways shall bear their proportionate share of the cost according to benefits, and in specific terms gives authority to cross streets, highways, railways, canals or ditches. Article V was passed in 1907. Laws 1907, ch. 153. The only reference to roads therein is section 24, which provides: "Said district may dig ditches and drains under and across railroads and public highways." This resume shows that, with the exception of ditches dug by districts organized under the acts of 1905 and 1907, the authority to cut and cross highways at all must be derived by implication.

The appellant is organized under the provisions of the act of 1905, as amended. Comp. St. 1911, ch. 89, art. IV. Section 23, so far as applicable, is as follows: "The said

board shall have the power to construct the said works across any street, avenue, highway, railway, canal, ditch or flume which the route of said ditches may intersect or cross, in such manner as to afford security for life and property, but the said board shall restore the same, when so crossed or intersected, to its former state as near as may be, or in a sufficient manner not to have impaired unnecessarily its usefulness; and every company whose railroad shall be intersected or crossed by said works shall unite with said board in forming said intersections and crossings, and grant the privilege aforesaid; and if such railroad company and said board, or the owners and controllers of said property, thing or franchise so to be crossed, cannot agree upon the amount to be paid therefor, or the points or the manner of said crossings, the same shall be ascertained and determined in all respects as is provided in respect to the taking of land."

Prior to 1887 there appears to have been no general statute in this state regulating the crossing or cutting of highways by corporations or persons having a legal right to do so, or prescribing their duties with respect to restoring the road to its former condition. In that year the legislature passed "An act to compel railroad corporations and others to make and keep in repair crossings." The first section of the act is as follows: "Any railroad corporation, canal company, mill owner, or any person or persons who now own, or may hereafter own, or operate any railroad, canal, or ditch that crosses any public or private road, shall make and keep in good repair good and sufficient crossings on all such roads, including all the grading, bridges, ditches, and culverts that may be necessary within their right of way." The remainder of the act is mainly concerned with the manner of enforcing this duty. Laws 1887, ch. 73; Comp. St. 1911, ch. 78, sec. 110.

At the common law it was ordinarily the duty of the county to erect and repair bridges; but, where a highway was crossed or cut for any purpose by other than highway authorities, it was the duty of those interfering with

the road to restore the same. Quoting from 16 Halsbury, Laws of England, 191: "Where individuals have for their private purposes created a necessity for a public bridge, e. g., by cutting a canal or drain across an existing highway, or by deepening the water at a ford, and have built a bridge in order to enable the public to exercise the right of passage, they must maintain and repair it, at any rate until they abandon their operations and restore the highway to its original condition. This liability is usually expressly imposed and defined, in the case of a statutory undertaking, by the undertakers' special act; but, apart from any special provision, the liability both to build and maintain a bridge attaches where the highway is interrupted, or rendered seriously inconvenient, either with or without statutory authority." See, also, 3 Comyns' Digest (1st Am. ed. B. 2) 34.

In *King v. Inhabitants of County of Kent*, 13 East, T. R. (Eng.) 220, a navigation company having deepened a ford and built a bridge over the same place under authority of a statute giving them power to alter highways or bridges, "leaving them or others as convenient in their room," was held bound to keep the bridge in repair. The identical argument used by appellant here was used in that case, that the burden of repairing public bridges was by general law cast upon the county, and that there is no provision in the navigation act casting the duty upon the company, but Lord Ellenborough said: "But here the statute gives power to the company to take or alter the old highway for their own purposes, upon condition of leaving another passage as convenient in its room; and if they do not perform the condition, they are not entitled to do the act. It is a continuing condition; and when the company thought proper for their own benefit to alter the highway in the bed of the river, so that the public could no longer have the same benefit of the ford, they were bound to give another passage over the bridge, and to keep it for the public." Bayley, J., said: "The act empowered the company to amend or alter such bridges

or highways as hindered the navigation, leaving them or others as convenient in their room; and after altering the bed of the river so as to make it no longer fordable, they could not leave another convenient passage in the highway there without making and keeping up a bridge."

In *King v. Inhabitants of Lindsey, County of Lincoln,* 15 East, T. R. (Eng.) 317, the facts were similar. One of the judges said: "The authority given to the company to make the cut, which rendered the highway impassable without a bridge, must create an obligation in them to erect the bridge, though the word authorize in the act might not of itself create the obligation."

In a later case, *King v. Inhabitants of County of Kent,* 2 M. & S. (Eng.) 513, the facts were that, about 45 years before, a miller had deepened the water of a ford, which was often impassable, through which there was a public highway. He afterwards built a bridge over it, which the public had ever since used. It was held that this case was distinguishable, and that the county was liable to repair because the public had received a direct benefit by the erection of the bridge over the inconvenient ford.

*King v. Kerrison,* 3 M. & S. (Eng.) 526: Certain commissioners who were authorized to make a new channel for navigation purposes cut through a highway and built a bridge over the channel. It was held that the proprietors, and not the county, were liable to repair. Bayley, J., said: "This differs from the last case of *Rex v. Inhabitants of Kent;* there the county derived a very essential benefit from the bridge; they had before but a passage through the ford, which is always an inconvenient one; but what benefit does this county derive from passing over a bridge instead of a solid highway?" See, also, *Manley, Adm'r, v. St. Helen's C. & R. Co.,* 2 H. & N. (Eng.) 840. The same rule has been almost uniformly applied in the United States. Most of the cases are concerned with the duties of railroad companies, but some with those of canal companies or drainage districts intersecting highways.

In New York where a mill owner who had dug a race across the highway and built a bridge over it was sued by a person injured by reason of the bridge having been allowed to become out of repair, it was held that the person who made the bridge necessary had the burden of maintaining it and was liable for negligence in so doing. *Dygert v. Schenck*, 23 Wend. (N. Y.) 446.

The supreme court of Massachusetts, in speaking of the duty of a railroad company at a point where it had erected a bridge to carry the public highway across its track, said: "In building the bridge, the railroad company have undertaken 'to make a safe passage for the road, which existed previously, across their railroad. They dispossess the ordinary officers, charged with the maintenance of public ways, from so much of the way as is necessary to effect this purpose. The statute requires them to keep in repair just what it requires them to construct." *White v. Inhabitants of Quincy*, 97 Mass. 430.

In Kansas, it is held that it is the legal duty of an irrigation company to restore the highways which its ditch intersects with suitable bridges adequate to accommodate all public travel, and this independently of statutory requirement. *State v. Lake Koen N., R. & I. Co.*, 63 Kan. 394. The Kansas statute, however, has the further provision that, when such bridges are constructed, they "shall be and become a part of the public highway, and shall be maintained and kept in repair by the authorities having charge of such highways." If the Nebraska legislature had been equally careful to specify upon whom rested this duty, there would have been no occasion for this controversy.

In Pennsylvania, a railroad company, having changed the location of a public road and erected a bridge over a creek for the new road, refused to repair and maintain it. It was rebuilt by the township, which brought an action to recover the cost of the bridge. It was held that, the company having originally built the bridge to meet the necessity of the public, the duty devolved upon it to main-

tain and repair it—citing *Woodring v. Forks Township,* 4 Casey (Pa.) 355, to the effect that, where the owner of land cuts a ditch across a public road for his own purpose, he is not only bound to build a bridge, but to maintain it perpetually thereafter. *Pennsylvania R. Co. v. Borough of Irwin,* 85 Pa. St. 336.

It is held in Illinois that any person or corporation that cuts through a highway for its own benefit must furnish to the public a proper crossing. *Haines v. People,* 19 Ill. App. 354; *People v. Chicago & A. R. Co.,* 67 Ill. 118. And the drainage statutes did not change this obligation. *Commissioners of Lake Fork Special Drainage District v. Biggs,* 134 Ill. App. 239; *Commissioners of Highways v. Commissioners of Lake Fork Special Drainage District,* 246 Ill. 388. See, also, on the general subject, 1 Elliott, Roads and Streets (3d ed.) sec. 48 (41); *Perley v. Chandler,* 6 Mass. 453; *Wayne County Turnpike Co. v. Berry,* 5 Ind. 286; *Board of Commissioners v. White Water Valley Canal Co.,* 2 Cart. (Ind.) 162; *City of Moundsville v. Ohio R. R. Co.,* 37 W. Va. 92; *People v. Fenton & T. R. Co.,* 252 Ill. 372.

Returning now to a consideration of our statute of 1887, it is apparent that it is merely declaratory of the common law, and that the same common-sense reasons which led both the English and American courts to the conclusion in the opinions cited were the impelling motives to the enactment of the Nebraska statute. The statute was considered with relation to railways in *State v. Chicago, B. & Q. R. Co.,* 29 Neb. 412, and in *Missouri P. R. Co. v. Cass County,* 76 Neb. 396, and was held to apply to highways laid out after the construction of the railroad, as well as to those established and in use before the road was built. In *Nuckolls County v. Guthrie & Co.,* 76 Neb. 464, it is held that, under this statute, the duty to maintain bridges over a millrace on a public highway is upon the mill owner, and that the duty is a continuing one. See, also, *Franklin County v. Wilt & Polly,* 87 Neb. 132.

It is contended that, the drainage district being a public corporation, the statute does not affect it, and, further, that, since the drainage works are for the public benefit, the reasoning of the common law based upon the private advantage to the owner of a mill, a canal, or a railroad does not apply. While a scheme of drainage in this state must be "conducive to the public health, convenience and welfare," as the statute requires, in order to warrant the exercise of the police power in its behalf, yet for pecuniary benefit to the incorporators such districts are usually formed. It would be difficult to find a sufficient number of altruistic individuals to form a district and bear its burdens and expenses without the pleasing prospect of future benefit in increased productiveness of the lands affected or by enhancement in their value. Private advantage is the mainspring of the movement, and the same reasons exist whether the form of the controlling authority be public or private. Without doubt the legislature has the power to apportion among public corporations concerned with the roads the duty to maintain the same, and, if it so decide, to take the burden of erecting and maintaining bridges away from drainage districts and place it upon the public at large, but we are of the opinion that it has not done so by the act under consideration.

While not passing upon the point of constitutionality, the language of Judge SULLIVAN in the opinion in *State v. Farmers & Merchants Irrigation Co.*, 59 Neb. 1, suggests a query: "Why should these companies be put in a class by themselves and be given immunity from the burdens which all others, under similar conditions, are required to bear? Their ditches are not, by the section in question, segregated from other private ditches on account of any peculiar characteristics which they possess. The legislation is manifestly as appropriate to the class excluded as to the class included; and the only reason we can discover for diverse legislation with respect to them is the arbitrary and insufficient one of ownership. The obvious

purpose of the legislature in dealing with both classes was to secure to the public safe and substantial bridges across private ditches, and there was no more reason for exempting some proprietors from the expense of maintaining their bridges, because engaged in the business of irrigation, than there would be for exempting others who used their ditches to drain wet lands or to protect inclosures."

There is, however, another consideration which merits attention. The district is given power to change the channel of streams. In so doing, it is probable that, either at the time of the change or afterwards as the new channel scours and washes and the old fills up, the necessity of maintaining bridges over the old channel ceases. There is a public benefit in the new construction. To maintain the new bridge would impose no greater burden on the public authorities than to maintain the old one, and the straightening of the channel and prevention of floods would undoubtedly tend to lessen the damages which public roads and bridges would suffer from such conditions. *Dygert v. Schenck,* 23 Wend. (N. Y.) 446. In such case the reasoning of the case of *King v. Inhabitants of County of Kent,* 2 M. & S. (Eng.) 513, applies. The public having been compelled to bridge the stream at the old channel and maintain the bridge, if the necessity for its upkeep ends, should be compelled to assume the burden of keeping up the necessary crossing over the new channel. *State v. Chicago, B. & Q. R. Co., supra,* recognizes this principle.

The dominant note running through all the cases is the preservation of the highway. In the old days the pack horse, the stage coach, and the wagon were the only instrumentalities of commerce on land, and the maintenance of the highway was essential to free intercourse. Hence, the care to protect it, to enforce the duty of repair, even by indictment and by penalties for its obstruction. While the railroad lessened the use of the roads for extended journeys, public interest in their preservation

53

now exists in a growing degree since the automobile and the tractor are to be found upon every highway.

It is claimed that the provisions of section 23 cover the whole subject of the rights and duties of the district with relation to public roads, and that, being a special act, it limits and controls the act of 1887. We do not so understand it. It is declaratory of the duty to restore the highway, and is, equally with the act of 1887, consistent with the common law. As we have seen, similar language has been so interpreted by other courts.

The judgment of the district court is warranted by the law and the facts. It is therefore

AFFIRMED.