1998 SD 109

Lisa HANSEN, Plaintiff and Appellant,

v.

SOUTH DAKOTA DEPARTMENT OF TRANSPORTATION, a State Agency; Richard L. Howard, in his individual capacity and in his capacity as Secretary of Department of Transportation; Richard L. Howard, in his individual capacity and in his capacity as Director of Highways; Dr. V.B. Sibley, in his individual capacity and in his capacity as a member of the Transportation Commission, A South Dakota State Commission; E.D. Baer, in his individual capacity and in his capacity as a member of the Transportation Commission, a South Dakota State Commission; Jim Mahowald, in his individual capacity and in his capacity as a member of the Transportation Commission, a South Dakota State Commission; Jim Long, in his individual capacity and in his capacity as a member of the Transportation Commission, a South Dakota State Commission; Louis Wudel, in his individual capacity and his capacity as a member of the Transportation Commission, a South Dakota State Commission; Wayne Peters, in his individual capacity and in his capacity as a member of the Transportation Commission, a South Dakota State Commission; William Hustead, in his individual capacity and in his capacity as a member of the Transportation Commission, a South Dakota State Commission, Defendants and Appellees.

No. 20326.

Supreme Court of South Dakota.

Considered on Briefs June 2, 1998.

Reassigned Aug. 18, 1998.

Decided Sept. 30, 1998.

Michael D. Stevens of Blackburn, Stevens & Fox, Yankton, for plaintiff and appellant.

Craig A. Kennedy of Doyle & Kennedy, Yankton, for defendants and appellees.

GILBERTSON, Justice (on reassignment).

[¶ 1.] Lisa Hansen (Hansen) was injured after driving her car into an unmarked construction hole on an Interstate 29 bridge. She sued the South Dakota Department of Transportation (DOT), DOT Secretary Richard Howard (Howard), and members of the Transportation Commission (Commission) for negligence in leaving the hole unmarked and unguarded. The trial court granted the defendants' motion to dismiss on the basis that sovereign immunity barred the action. We affirm.

### FACTS

[¶ 2.] At approximately 7:20 a.m. on October 15, 1993, Hansen was traveling in the southbound lane on Interstate 29 enroute to her teaching job in Jefferson. As she crossed a bridge just south of Exit 18, near Elk Point, her right front wheel suddenly dropped into a hole in the bridge. The impact threw her into the steering wheel, causing serious injuries to her neck, shoulders, and back.

[¶ 3.] According to Hansen, a construction crew created the hole by cutting completely through the bridge to remove concrete and rebar. Only the rebar was replaced and the hole was left unmarked and unguarded.

[¶ 4.] Hansen sued DOT, Howard, and Commission. She also sued Howard in his official capacity as Director of Highways.[1]

1. Howard and all Commission members were sued in both their official and individual capacities. In the trial court's order granting dismiss-al, it states that Hansen orally dismissed all of the individual capacity claims.

In her complaint, Hansen alleged the defendants breached a statutory duty to protect motorists from accident and injury by failing to erect signs and guards to warn of the defect in the road. She also alleged a cause of action based on theories of negligence, negligence per se, and res ipsa loquitur.

[¶ 5.] Defendants moved to dismiss on the basis that Hansen failed to state a claim upon which relief could be granted and that sovereign immunity barred her claims. The trial court granted DOT's motion to dismiss on the basis that "sovereign immunity is waived only to the extent of coverage afforded by the Public Entity Pool for Liability (PEPL) and that PEPL does not cover public entities, but only their employees." This ruling was not appealed. The court granted Howard and Commission's motion to dismiss on the basis that all of their duties are discretionary and therefore protected by sovereign immunity. Hansen appeals. We affirm.

## STANDARD OF REVIEW

[¶ 6.] This case was dismissed pursuant to SDCL 15-6-12(b)(5) [hereinafter Rule 12(b)(5) ]:

Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion:

. . .

(5) Failure to state a claim upon which relief can be granted[.]

"A motion to dismiss under Rule 12(b)(5) tests the law of a plaintiff's claim, not the facts which support it." *Thompson v. Summers*, 1997 SD 103, ¶ 5, 567 N.W.2d 387, 390 (citing *Stumes v. Bloomberg*, 1996 SD 93, ¶ 6, 551 N.W.2d 590, 592; *Schlosser v. Norwest Bank South Dakota*, 506 N.W.2d 416, 418 (S.D.1993)). *Schlosser* directs the trial court to consider

the complaint's allegations and any exhibits which are attached. The court accepts the pleader's description of what happened along with any conclusions reasonably drawn therefrom. The motion may be directed to the whole complaint or only specified counts contained in it.... In appraising the sufficiency of the complaint

we follow, of course, the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. The question is whether in the light most favorable to the plaintiff, and with doubt resolved in his or her behalf, the complaint states any valid claim of relief. The court must go beyond the allegations for relief and examine the complaint to determine if the allegations provide for relief on any possible theory.

506 N.W.2d at 418 (citations & internal quotations omitted).

[¶ 7.] Whether the defendants are protected by sovereign immunity is a question of law, reviewed de novo, with no deference given to the trial court's legal conclusions. *Wilson v. Hogan*, 473 N.W.2d 492, 493 (S.D.1991) (citations omitted).

[¶ 8.] **Whether The Doctrine Of Sovereign Immunity Bars Hansen's Claims.**

[¶ 9.] Generally, the doctrine of sovereign immunity as found in the common law and in the South Dakota Constitution provides that the governing acts of the state, its agencies, other public entities, and their employees cannot be attacked in court without the state's consent. *Wilson*, 473 N.W.2d at 494 (citing S.D.Const. art. III, § 27; *Blue Fox Bar, Inc. v. City of Yankton*, 424 N.W.2d 915, 917 (S.D.1988)).

[¶ 10.] In 1986, the Legislature enacted SDCL 21-32A-1, -2, and -3, establishing the procedure for bringing claims against public entities and their employees, other than state, and waiving sovereign immunity to the extent of participation in a risk-sharing pool or the purchase of liability insurance.

[¶ 11.] Also in 1986, the Legislature enacted SDCL ch. 3-22, which established PEPL:

There is hereby established the South Dakota public entity pool for liability effective March 1, 1987. The purpose of this program is to provide a fund as the sole source for payment of valid tort claims against all member public entities of the state and their officers and employees for all liability they may incur based upon negligence in the operation of motor vehi-

cles or negligence in performing other acts within an employee's scope of employment.... *Nothing in this chapter shall be determined to be an abrogation, change or modification of the doctrine of governmental or sovereign immunity created by any statute, judicial opinion, ordinance, resolution or tort claims act* nor shall this chapter create any cause of action in federal court or under federal law. (emphasis added).

SDCL 3–22–1.

[¶ 12.] In 1991, SDCL 21–32A–2 was amended to include the state, and its "employees, officers, or agents," in this waiver of sovereign immunity:

Except insofar as a public entity, including the state, participates in a risk sharing pool or insurance is purchased pursuant to § 21–32A–1, any employee, officer or agent of the public entity, including the state, while acting within the scope of his employment or agency, whether such acts are ministerial or discretionary, is immune from suit or liability for damages brought against him in either his individual or official capacity. The immunity recognized herein may be raised by way of affirmative defense.

*See also* SDCL 21–32–16:

To the extent such liability insurance is purchased pursuant to § 21–32–15 and to the extent coverage is afforded thereunder, the state shall be deemed to have waived the common law doctrine of sovereign immunity and consented to suit in the same manner that any other party may be sued.

[¶ 13.] Before the state waived sovereign immunity to the extent of participation in a risk-sharing pool or the purchase of liability insurance via SDCL ch. 21–32A, suit could only be brought against a state employee if a three-step test was met:

(1) The state could not be the real party in interest;

(2) the employee could not be sued in an official capacity; and

(3) the plaintiff had to allege personal negligence on the part of an employee exercising a ministerial function.

*Reiman v. Solem*, 337 N.W.2d 804, 805 (S.D. 1983); *see also Gasper v. Freidel*, 450 N.W.2d 226, 230 (S.D.1990); *Bego v. Gordon*, 407 N.W.2d 801, 806 (S.D.1987); *National Bank of South Dakota v. Leir*, 325 N.W.2d 845, 847–48 (S.D.1982); *High–Grade Oil Co., Inc. v. Sommer*, 295 N.W.2d 736, 737 (S.D. 1980).

[¶ 14.] Prior to the state's waiver of immunity, a state employee could not be sued in an official capacity because, in that capacity, he or she necessarily shared whatever immunities were retained by the state:

Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law. Official-capacity suits, in contrast, generally represent only another way of pleading an action against an entity of which an officer is an agent. As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is not a suit against the official personally, for the real party in interest is the entity. Thus, while an award of damages against an official in his personal capacity can be executed only against the official's personal assets, a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself.

. . .

The only immunities that can be claimed in an official-capacity action are forms of sovereign immunity that the entity, [as an] entity, may possess, such as the Eleventh Amendment.

*Kentucky v. Graham*, 473 U.S. 159, 165–67, 105 S.Ct. 3099, 3105–06, 87 L.Ed.2d 114, 121–22 (1985) (citations & internal quotations omitted).

[¶ 15.] When the state has waived sovereign immunity to the extent of participation in a risk-sharing pool or the purchase of liability insurance, a state employee sued in his official capacity can no longer avail himself of the defense of sovereign immunity except in defense of alleged negligence arising from the performance of a discretionary act.

[¶ 16.] The PEPL, *Memorandum of Liability Coverage to the Employees of the State of South Dakota*, Endorsement No. 2 (Issue

Date May 1, 1996, Effective Date July 1, 1993), provides for damages resulting from negligently performed ministerial acts or tasks.

> Ministerial act or task means an act or task that involves obedience to instructions, *but demands no special discretion, judgment or skill.*

*Id.* (italics in original, underlining added).[2]

[¶ 17.] This endorsement is a departure from the exclusion it replaced, which did not make an exception for damages resulting from ministerial acts or tasks. The amendment may have resulted from this court's holding in *Kyllo v. Panzer,* 535 N.W.2d 896 (S.D.1995), that SDCL 21–32–17 and 21–32A–2 were unconstitutional so far as they extended sovereign immunity to state employees performing ministerial functions.[3] "This rule of law that a public employee is liable for negligently performed ministerial acts was first recognized by this court in *State v. Ruth,* 9 S.D. 84, 90, 68 N.W. 189, 190 (1896), seven years after the adoption of the South Dakota Constitution." *Kyllo,* 535 N.W.2d at 899 (tracing the common law history of sovereign immunity); *see also Wilson,* 473 N.W.2d at 494 ("[T]he negligent acts of public employees are not shielded by sovereign immunity when the employees are acting in a merely ministerial, rather than discretionary capacity.") (collecting cases).

■ [¶ 18.] Hansen states that her allegations of breach of statutory and common-law duties pertain to ministerial acts or omissions by Howard and Commission and thus are not barred by sovereign immunity.[4] Therefore, we must examine her claims to determine if she is correct, and if so, whether they survive a motion to dismiss under Rule 12(b)(5). Whether a particular function is discretionary or ministerial is a question of law. *Gasper,* 450 N.W.2d at 231–32; *Bego,* 407 N.W.2d at 810.

## *[¶ 19.] a. Claim Against Howard*

[¶ 20.] At the time of the Hansen accident, Howard held the position of "Director of Highways." SDCL 31–2–9[5] states "[t]he director shall have full responsibility and authority for the execution of policies determined by the department of transportation. . . ." Howard also held the position of "Secretary of Transportation." His duties, as set forth in SDCL ch. 31–2, were to oversee the entire operation of the department of transportation. Also under SDCL 1–44–14, "[t]he department of transportation shall, *under the direction and control of the secretary of transportation,* perform all the functions of the former state highway commission created by chapter 31–2. . . ." SDCL 1–44–14 (emphasis added).

[¶ 21.] Hansen claims that Howard has a statutory duty to inspect, maintain, and repair the interstate bridges to protect the traveling public from injury.[6] She relies upon SDCL 31–32–10, 31–5–1 and 31–28–6.[7]

2. There are numerous exclusions to liability which are not relevant to this case. See *The Public Entity Pool for Liability,* Memorandum of Liability Coverage to the Employees of the State of South Dakota (July 1, 1993).

3. Although PEPL coverage was amended to comport with *Kyllo,* the Legislature has not yet amended these statutes. The text of SDCL 21–32–17 still provides:

> Except as provided in § 21–32–16, any employee, officer or agent of the state, while acting within the scope of his employment or agency, whether such acts are ministerial or discretionary, is immune from suit or liability for damages brought against him in either his individual or official capacity.

4. Hansen appeals only the grant of the motion to dismiss Howard and Commission, but not DOT.

5. SDCL 31–2–9 was repealed by S.L. 1996, ch. 20 § 14, in the Legislature's reorganization of DOT.

6. There is no dispute that DOT is responsible for repair and maintenance of Interstate 29. See SDCL 31–4–152 (establishing Interstate 29 as part of the state trunk highway system); *see also* SDCL 31–4–14: ·

> All marking, surveying, construction, repairing, and maintenance of the state trunk highway system shall be under the control and supervision of the department of transportation, and the department shall be charged with the administration of the laws relative thereto.

7. Interstate 29 is part of the federal highway system and its repair and maintenance are subject to federal regulations. *See, e.g.,* 23 C.F.R. § 650.411(c)(1):

> It shall be the responsibility of the State agency to properly maintain, or cause to be properly maintained, any [bridge replacement or rehabilitation] project constructed under this bridge program.

Each statute shall be examined separately. For the foregoing reasons we hold that Howard's role in Hansen's accident *does not* constitute a ministerial function.

[¶ 22.] As will be established, to say that Howard, as Secretary of Transportation (Secretary) and Director of Highways (Director), was charged with a ministerial duty under these present facts and under the statutes cited by Hansen simply does not comport with reality. The reality is that Howard had charge of over 1,311 employees and a budget of over $268,892,309 for the fiscal year 1994, which was in effect at the time of Hansen's accident. The department of transportation, of which Howard is the Secretary, "control[s] and supervise[s]" the thousands of miles of highways contained in the "state trunk system." SDCL 31–1–5.

[¶ 23.] Proper analysis must avoid a mechanistic approach to the question and exemplifies the difficulties inherent in the ministerial/discretionary dichotomy.

[T]he determination as to whether an official has acted in his or her discretion or capacity, and therefore is entitled to immunity, is not subject to a fixed, invariable rule, but instead requires a discerning inquiry into whether the contributions of immunity to effective government in the particular context outweigh the perhaps recurring harm to individual citizens.... [T]he view has been expressed that, in the final analysis, the decision as to *whether a public official's acts are discretionary or ministerial must be determined by the facts of each particular case* after weighing such factors as the nature of the official's duties, the extent to which the acts involve policymaking or the exercise of professional expertise and judgment, and the likely consequences of withholding immunity.

. . .

The view has also been expressed that the distinction between discretionary and ministerial acts is often one of degree, since any official act that is ministerial will still require the actor to use some discretion in its performance. And, under particular circumstances, even a task or function usually considered ministerial—for example, ... highway repair, ... may actually involve the exercise of discretion.

63C Am.Jur.2d *Public Officers and Employees* § 327, at 775–776 (1997) (footnotes omitted) (emphasis added).

[A] ministerial act is defined as *absolute, certain, and imperative,* involving merely the execution of a specific duty arising from fixed designated facts or the execution of a set task imposed by a law prescribing and defining the time, mode, and occasion of its performance with such certainty that nothing remains for judgment or discretion, being a simple, definite duty arising under and because of stated conditions and imposed by law. A ministerial act envisions direct adherence to a governing rule or standard with a compulsory result. It is performed in a prescribed manner without the exercise of judgment or discretion as to the propriety of the action. In short, once it is determined that the act should be performed, subsequent duties may be considered ministerial. If there is a *readily ascertainable standard* by which the action of the government servant may be measured, whether that standard is written or the product of experience, it is not within the discretionary function exception.

57 Am.Jur.2d *Municipal, County, School & State Tort Liability* § 120, at 132–33 (1988) (emphasis added). This comports with the PEPL definition which defines a ministerial task as involving "obedience to instructions" which require "no special discretion, judgment or skill." If the duties do not fall within this definition, they are not ministerial and thus are discretionary for this is the limits of the abrogation of sovereign immunity authorized by the Legislature. For this reason the PEPL document does not even contain a definition of discretionary tasks. SDCL 3–22–1, 3–22–2 and 3–22–16.

[¶ 24.] Certain precautions are necessary in making the distinction between ministerial and discretionary duties which have been well stated by the court in *Jackson v. Wilson,* 581 S.W.2d 39, 43 (Mo.Ct.App.1979):

When clinically viewed, it becomes readily obvious that ease in verbally espousing the discretionary-ministerial distinction inherent in the official immunity doctrine belies the practical difficulties encountered in its

application in certain cases. Therefore, application of the official immunity doctrine is susceptible to the ever-lurking danger of becoming nothing more than a labeling process because of the myopic distinction between the discretionary functions and ministerial functions on the part of public officials in certain given cases. By the very nature of the doctrine of official immunity, vigilance must constantly be exercised to prevent the discretionary-ministerial dichotomy therein from becoming nothing more than a continuum with liability coming down on one side and immunity on the other in an atmosphere completely divorced from factual reality.

[¶ 25.] The statutes cited by Hansen are not "absolute, certain, and imperative, involving merely the execution of a specific duty arising from fixed designated facts or the execution of a set task imposed by a law prescribing and defining the time, mode, and occasion of its performance." 57 Am.Jur.2d *Municipal, County, School & State Tort Liability* § 120, at 132–33. None are void of "special discretion, judgment or skill."

[¶ 26.] Hansen argues that SDCL 31–32–10 imposes a ministerial duty upon Howard to erect a guard over the danger. SDCL 31–32–10 provides:

> If any highway, culvert, or bridge is damaged by flood, fire *or other cause*, to the extent that it endangers the safety of public travel, the *governing body* responsible for the maintenance of such highway, culvert, or bridge, *shall within forty-eight hours of receiving notice of such danger*, erect guards over such defect or across such highway of sufficient height, width, and strength to guard the public from accident or injury and shall repair the damage or provide an alternative means of crossing within a reasonable time after receiving notice of the danger. The governing body shall erect a similar guard across any abandoned public highway, culvert, or bridge. Any officer who violates any of the provisions of this section commits a petty offense.

(Emphasis added).

[¶ 27.] The plain language of the above statute requires a governing body to erect a guard over *damage* to a bridge caused by "flood, fire, or other cause" within 48 hours of receiving notice. *Id.* Here, the bridge had not been damaged by some other cause but was in the process of being repaired.[8] "Other cause" hardly defines a "set task imposed by a law prescribing and defining the time, mode, and occasion of its performance with such certainty that nothing remains for judgment or discretion." 57 Am.Jur.2d *Municipal, County, School & State Tort Liability* § 120, at 132.

[¶ 28.] Most importantly, SDCL 31–32–10 does not establish a "hard and fast rule as to course of conduct that" Howard must take with regard to the facts of this case. *Kyllo,* 535 N.W.2d at 901–902 n.9. Hansen argues Howard should have known that a bridge not damaged by "flood or fire" yet *under repair* is "damaged" by "other cause" as per SDCL 31–32–10. However, "other cause" is not defined and as such fails to provide Howard with a sufficiently specific standard of care with which to guide his decisions as either Secretary or Director. *Id.*

[¶ 29.] Hansen cites to SDCL 31–5–1 as imposing a ministerial duty upon Howard. The department of transportation shall maintain, and keep in repair all highways or portions of highways, including the bridges and culverts thereon, which highways have been constructed or improved by the department and are on the state trunk highway system.

We fail to see how this statute provides a "*readily ascertainable standard* by which the action of [Howard] may be measured...." (57 Am.Jur.2d *Municipal, County, School & State Tort Liability* § 120, at 133) (emphasis added). When applied to a position that supervises hundreds of employees and thousands of miles of highways, it certainly calls for discretion, judgment or skill. One could not pluck an ordinary citizen off the street

---

8. *See High–Grade Oil,* 295 N.W.2d 736 where we held that road construction and design are discretionary in nature and not a ministerial act.

and expect they could successfully execute the duties of Howard's offices as required by this statute.

[¶ 30.] If this broad statute is held to impose a ministerial duty upon Howard would he then become liable for every defect arising on the state highway system no matter what the degree and what the cause? In addition, the obligations of SDCL 31–5–1 are placed upon the DOT and not specifically upon Howard as its Secretary.[9]

■ [¶ 31.] Hansen next cites SDCL 31–28–6 as imposing a ministerial duty upon Howard to place a warning sign at the "point of danger" Hansen encountered. This statute provides in part, "The public board or officer whose duty it is to repair or maintain any public highway shall erect and maintain at points in conformity with standard *uniform traffic control practices* on ... [a] point of danger ...; a substantial and conspicuous warning sign ...." (emphasis added). It is argued that the reference in SDCL 31–28–6 to "uniform traffic control practices" dictates that the sign conform to the Manual on Uniform Traffic Control Devices (MUTCD) citing 23 C.F.R. § 655.601–07 as authority. One other jurisdiction has held that under most circumstances, "[a] traffic control device is not 'discretionary' if it is mandated by the MUTCD." *Patton v. City of Cleveland*, 95 Ohio App.3d 21, 641 N.E.2d 1126, 1130 (OhioCt.App. 1994) (citations & emphasis omitted). Hansen however, fails to point to a specific governing provision from MUTCD in support of the specific duty it purports to lay upon Howard.

In order to discharge his duties effectively, a public servant must be free to exercise his judgment unhampered by the fear of unpredictable liability. Where the nature of the servant's decision or action in question is such that it may not be measured against a predictable standard of care, the possibility of litigation may tend to discourage the making of clear choices. It is in the public interest to avoid such a chilling effect upon the servant's performance of his duties. Where, on the other hand, a standard of care may be defined and applied with relative ease, the public servant is not similarly deterred and the public interest in the protection of the official weakens. Also relevant to the strength of the public interest is the potential impact of the challenged decision or action upon the public as a whole or upon a large segment of it. The greater or more pervasive this impact, the stronger becomes the public interest in insuring unfettered decisionmaking.

*DuBree v. Commonwealth*, 481 Pa. 540, 393 A.2d 293, 295 (Pa. 1978) (superseded by statute as stated in *Weinstein v. Bullick*, 827 F.Supp. 1193 (E.D.Pa.1993)).

· [A]t a time when those responsible for the maintenance of state highways have been in a position where important economic decisions had to be made as to what areas needing repairs should and had to have priority, it is of utmost importance that they be able to engage in unfettered decision making.

*Lehnig v. Felton*, 278 Pa.Super. 12, 419 A.2d 1330, 1332 (Pa.Super.Ct. 1980) (superseded by statute as stated in *Mason & Dixon Lines, Inc. v. Mognet*, 166 Pa.Cmwlth. 1, 645 A.2d 1370, 1376 (Pa.Commw.Ct. 1994)).

[¶ 32.] The outcome advocated by Hansen would not produce a predictable standard of care. More, the outcome would severely hin-

---

9. Hansen argues our decision in *Bryant v. Butte County*, 457 N.W.2d 467 (S.D.1990), requires the conclusion that Howard's duties are ministerial. ·(See supra n8). This conclusion is untenable for two obvious reasons. First, *Bryant* concerned entirely different statutes, SDCL 31–12–19 and –26, which are not at issue in the present case. *Bryant* at 469–70. Second, SDCL 31–12–19 and –26 specifically imposed a duty only upon "the board of county commissioners." *Id*. Neither the Department of Transportation nor any of its officers were a party in *Bryant*.

Under the circumstances of this case a holding that Howard was not performing a ministerial function would not be at odds with our prior

case law. *See Fritz v. Howard Township*, 1997 SD 122, 570 N.W.2d 240; *Homan v. Chicago & Northwestern Transp. Co.*, 314 N.W.2d 861, 862 (S.D.1982); *Kiel v. DeSmet Township*, 90 S.D. 492, 496, 242 N.W.2d 153, 155 (1976). The ministerial/discretionary test is still the law of South Dakota. Significantly, where there is no "clearly defined rule" imposing a duty upon the defendant, his conduct cannot be characterized as ministerial. *See Kyllo*, 535 N.W.2d at 901–902 n9 (describing discretionary acts as "those acts wherein there is no hard and fast rule as to course of conduct that one must or must not take and, if there is [a] clearly defined rule, such would eliminate discretion.") (citation omitted).

der "unfettered decisionmaking" as Howard would be forced to divert significant DOT resources to attempt to ferret out every possible large pothole or other defect in the state highway system. If Howard is to be held liable under the facts of this case, all other public servants including cabinet officers, exercising similar executive powers will also be liable. This arrives at a result where all are doing ministerial duties in the executive branch of state government with the sole exception being the Governor.

[¶ 33.] In *Kyllo,* 535 N.W.2d at 901–902 n.9, we held that ministerial acts are those "which [involve] obedience to instructions, but [demand] no special discretion, judgment or skill." Under present circumstances, we hold Howard's role in Hansen's accident does not qualify as ministerial and therefore the motion to dismiss was properly granted in his favor.

### *[¶ 34.] b. Claim Against Commission*

■ [¶ 35.] Hansen has failed to show that Commission is charged with or exercises anything other than discretionary, policy-making functions and duties, for which there can be no tort liability. *See* SDCL 1–44–14:

> [T]he transportation commission shall perform the ... quasi-legislative, quasi-judicial, advisory and special budgetary functions (as defined in § 1–32–1) of the state highway commission.[10]

*Cf. Bulman v. Hulstrand Constr. Co., Inc.,* 521 N.W.2d 632, 640 (N.D.1994) (abolishing doctrine of sovereign immunity and stating, "our decision should not be interpreted as imposing tort liability on the State for the exercise of discretionary acts in its official capacity, including legislative, judicial, quasi-legislative, and quasi-judicial functions.").

10. E.g. SDCL 1–26A–1.12, 1–44–7.3, 31–2–13.1, 31–5–21 (rule making authority), SDCL 31–5–8.3 and 31–4–4 (planning), SDCL 1–44–8, 31–5–7, 31–6–8 (budgetary) and SDCL 31–11–5 (other quasi-legislative and quasi-judicial roles).

11. There is no dispute that DOT is responsible for repair and maintenance of Interstate 29. *See* SDCL 31–4–152 (establishing Interstate 29 as part of the state trunk highway system); *see also* SDCL 31–4–14:

> All marking, surveying, construction, repairing, and maintenance of the state trunk highway system shall be under the control and

[¶ 36.] The order granting the motion to dismiss against Howard and the Commission is affirmed.

[¶ 37.] MILLER, C.J., and AMUNDSON and KONENKAMP, JJ., concur.

[¶ 38.] SABERS, J., concurs in part and dissents in part.

SABERS, Justice (concurring in part and dissenting in part).

[¶ 39.] I agree that Hansen failed to show that Commission is charged with or exercises anything other than discretionary, policy-making functions and duties, for which there can be no tort liability. *See* SDCL 1–44–14. However, I dissent on Issue 1.

### [¶ 40.] HANSEN HAS A VALID CLAIM AGAINST HOWARD AS HIS STATUTORY DUTIES WERE MINISTERIAL AND THEREFORE, DISMISSAL ON THE BASIS OF SOVEREIGN IMMUNITY WAS ERROR.

[¶ 41.] Hansen claims that Howard has a statutory duty to inspect, maintain, and repair the interstate bridges to protect the traveling public from injury. She relies on the following statutes:

> The department of transportation shall maintain, and keep in repair all highways or portions of highways, including the bridges and culverts thereon, which highways have been constructed or improved by the department and are on the state trunk highway system.

SDCL 31–5–1.[11]

> If any highway, culvert, or bridge is damaged by flood, fire or other cause,[12] to the extent that it endangers the safety of pub-

supervision of the department of transportation, and the department shall be charged with the administration of the laws relative thereto.

12. The majority opinion seems to imply that a construction hazard could never constitute the "other cause" of damage to the road. See supra ¶ 27. That would clearly be an untenable conclusion. Whether a road is "out of repair" is a question of fact. *See Zens v. Chicago, Milwaukee, St. Paul & Pac. R.R. Co.,* 386 N.W.2d 475, 478 (1986) ("We therefore determine that a genuine issue of material fact exists as to whether the [public road] became out of repair because of the widening and deepening of the ditch.").

lic travel, the governing body responsible for the maintenance of such highway, culvert, or bridge, shall within forty-eight hours of receiving notice of such danger, erect guards over such defect or across such highway of sufficient height, width, and strength to guard the public from accident or injury and shall repair the damage or provide an alternative means of crossing within a reasonable time after receiving notice of the danger. The governing body shall erect a similar guard across any abandoned public highway, culvert, or bridge. Any officer who violates any of the provisions of this section commits a petty offense.

SDCL 31–32–10. Interstate 29 is part of the federal highway system and its repair and maintenance are subject to federal regulations. *See, e.g.,* 23 C.F.R. § 650.411(c)(1):

It shall be the responsibility of the State agency to properly maintain, or cause to be properly maintained, any [bridge replacement or rehabilitation] project constructed under this bridge program.

[¶ 42.] We recently discussed SDCL 31–32–10 in *Fritz v. Howard Township,* 1997 SD 122, ¶¶ 12–13, 570 N.W.2d 240, 242:

Obviously, the main obligation ... under [SDCL 31–32–10] is to repair all defects in

a ... highway which endanger the safety of public travel. Incidentally the statute also imposes a secondary duty ... to erect temporary guards over defects, where needed, until repairs are made. [Citation omitted].

...

SDCL 31–28–6 provides for the placement of a warning sign for the benefit of approaching traffic:

The public board or officer whose duty it is to repair or maintain any public highway shall erect and maintain at points in conformity with standard uniform traffic control practices on each side of any sharp turn, blind crossing, or other point of danger on such highway, except railway crossings marked as required in § 31–28–7, a substantial and conspicuous warning sign, which sign shall be on the right-hand side of the highway approaching such point of danger. A violation of this section is a Class 1 misdemeanor.

(Citation omitted).[13]

[¶ 43.] Howard does not challenge settled South Dakota law that the obligation to erect a sign and a guard over a defect in the road constitutes a ministerial duty and does not involve a discretionary policy decision.[14] In

---

13. The reference in SDCL 31–28–6 to "uniform traffic control practices" dictates that the sign conform to the Manual on Uniform Traffic Control Devices (MUTCD). *See* 23 C.F.R. § 655.601–07. The MUTCD is a national publication promulgated by the Federal Highway Administration and is the "national standard for all traffic control devices installed on any street, highway, or bicycle trail open to public travel[.]" *Id.* § 655.603(a). The States may draft their own manual, so long as it is in "substantial conformance" with the national MUTCD, *id.* § (b), but are encouraged to adopt the national version.

South Dakota adopted the national version. *See* SDCL 31–28–11: "On any street or road constructed with federal aid, the location, form, character of informational regulatory warning signs, curb and pavement or other markings and traffic signals, shall conform to uniform national signing standards."

14. Howard does not adequately address the statutes. In fact, he does not address the statutes at all. His brief is based entirely on the premise that he is cloaked in sovereign immunity by virtue of his title and that every act he performs is discretionary. In other words, Howard makes none of the arguments provided by the majority.

It must be remembered that Howard and the other defendants refused to participate in pretrial evidentiary discovery and instead made a motion to dismiss. Under our standard of review, we must view the facts in the record in the light most favorable to Hansen. Howard recognizes this, even if the majority does not. The majority argues that these statutes do not impose ministerial duties. Since this issue was decided in *Bryant,* 457 N.W.2d 467, we would have to overrule that case to reach the majority's conclusion.

It is also settled law that all questions regarding whether this hole constituted a "defect," whether Howard had notice thereof, and whether he took adequate steps to protect the public cannot be determined as a matter of law and are to be resolved by the finder of fact. *See Homan v. Chicago & N.W. Transp. Co.,* 314 N.W.2d 861, 862 (S.D.1982):

Whether the absence of the sign in question from its designated location caused the road to become out of repair, and, if so, whether such defect was a proximate cause of the accident, and whether the sign as placed at the intersection ... constituted a "substantial guard" within the meaning of SDCL 31–32–10 ... are questions to be determined by the trier of fact.

*Bryant v. Butte County,* 457 N.W.2d 467, 470 (S.D.1990), we construed the parallel county highway repair statute and held that "[t]he 'shall' and 'duty' language mandates the county's duty to 'properly and adequately' maintain the county roads, thus making it clear that the county's duty to repair the road is ministerial." *Cf.* SDCL 2–14–2.1 ("As used in the South Dakota Codified Laws to direct any action, the term, shall, manifests a mandatory directive and does not confer any discretion in carrying out the action so directed."). The *policy* dictating that these acts be carried out is already established via the statutes and the MUTCD. "[A] ministerial act is the simple carrying out of a policy already established ... so that permitting state employees to be held liable for negligence in the performance of merely ministerial duties within the scope of their authority does not compromise the sovereignty of the state." *Kyllo v. Panzer,* 535 N.W.2d 896, 902 (S.D.1995) (quoting *Ritter v. Johnson,* 465 N.W.2d 196, 198 (S.D.1991)).[15]

[¶ 44.] Hansen claims that Howard was negligent in failing to train and supervise highway personnel regarding inspection and identification of defective road conditions and in failing to adequately notify and warn approaching motorists of this hazard. Howard counters, without citing supporting authority, that since he is not personally responsible for the placement of each sign or barricade, he cannot be sued. However, he admits that he has "supervisory authority over [DOT's] employees and agents, [and that] it is those employees and agents who are responsible for the work involved in road maintenance and repair." In fact, it is that supervisory authority which may give rise to liability.

[¶ 45.] An action may be brought against a governmental entity under a theory of "respondeat superior"[16] liability.

In the absence of sovereign immunity from tort liability or suit in tort, and with appropriate reservations depending on the effect that the nature of a particular act or function may have on the issue of immunity [i.e., whether the function is discretionary or ministerial], a state government or its agencies or instrumentalities is subject to liability under the doctrine of respondeat superior for the torts of its agents, officers, and employees while acting in the course and scope of their employment or authority[.]

57 Am.Jur.2d *Municipal, County, School & State Tort Liability* § 190, at 202 (1988) [hereinafter *"State Tort Liability"*]. Obviously, entities can only act through their

(Quoting *Kiel v. DeSmet Township,* 90 S.D. 492, 497, 242 N.W.2d 153, 156 (1976)). Therefore, under the majority's conclusion we would also have to overrule, at a minimum, *Homan, Kiel,* and *Fritz.* We should refrain from such a drastic displacement of settled law in the absence of any such request or briefing in support thereof.

15. We note that PEPL's definition of "ministerial act or task" (*supra* ¶ 16) comports with that set forth in *Kyllo.*

Discretionary acts are defined as "those acts wherein there is no hard and fast rule as to course of conduct that one must or must not take and, if there is [a] clearly defined rule, such would eliminate discretion." *Black's Law Dictionary* 467 (1990). The Restatement Second of Torts § 895D provides that discretionary functions involve the process of administering government, which requires that officers and employees determine a course of action to carry out the purpose for which they are charged. "The basis of the immunity [for discretionary functions] has been not so much a desire to protect an erring officer as it has been a recognition of the need of preserving independence of action without deterrence or

intimidation by the fear of personal liability and vexatious suits." *Id.*
Ministerial acts, on the other hand, are defined as "that which involves obedience to instructions, but demands no special discretion, judgment, or skill." *Black's Law Dictionary* 996 (1990). In discussing ministerial functions, the Restatement Second provides: "If an act of the official involves less in the way of personal decision or judgment or the matter for which judgment is required has little bearing of importance upon the validity of the act ... Ministerial acts are those done by officers and employees who are required to carry out the orders of others or to administer the law with little choice as to when, where, how or under what circumstances their acts are to be done." *Id.*
*Kyllo,* 535 N.W.2d at 901 n9.

16. Literally, "let the master answer." This doctrine provides that the employer is responsible for want of care on an employee's part toward those to whom the employer owes a duty to use care, provided that the failure of the employee to exercise such care occurred in the course of employment. *Black's Law Dictionary* 1311–12 (6th ed.1990).

employees. *See Norgeot v. State*, 334 N.W.2d 501, 504 (S.D.1983) ("A state can only act through its employees and for the state to waive immunity for its employees and not for itself would be completely inconsistent with the intent of the statute."); *State v. Hy–Vee Food Stores, Inc.*, 533 N.W.2d 147, 149 (S.D.1995) ("We begin our analysis with the rather mundane observation that a corporation cannot act but through its agents."). The doctrine of respondeat superior may be invoked in a suit against the State; the doctrine is recognized in South Dakota as part of the common law of negligence, *Rehm v. Lenz*, 1996 SD 51, ¶ 21, 547 N.W.2d 560, 566, and here, the State "consented to suit in the same manner that any other party may be sued." SDCL 21–32–16.

[¶ 46.] Contrary to Howard's assertion in the conclusion to his brief, made without supporting authority, it was not necessary for Hansen to implead any of Howard's subordinates in order to invoke the doctrine of respondeat superior:

> A governmental body subject to liability under the doctrine of respondeat superior for the tortious acts or omissions of its officers, agents, or employees, committed within the scope of their employment, may be subject to suit on that basis despite the fact that the individual actor employees are not named defendants in the plaintiffs' complaint. Some jurisdictions deem it sufficient for recovery against the governmental body to prove that its identified employee would be liable for conduct imputable to the employer even though that employee is not named a defendant in the action.

*State Tort Liability* § 657, at 593; *accord McCottrell v. City of Chicago*, 135 Ill.App.3d 517, 90 Ill.Dec. 258, 481 N.E.2d 1058, 1059 (IllAppCt 1985) ("Our courts have long recognized that in an action by a third party based on injuries caused by the negligence of the servant, the servant is not a necessary party in an action against the master.") (collecting cases).

[¶ 47.] At the time of the accident, Howard held the position of "Director of Highways." SDCL 31–2–9 then provided: [17]

... The director shall have full responsibility and authority for the execution of policies determined by the department of transportation....

Howard also held the position of "Secretary of Transportation." *See* SDCL 1–44–14:

> The department of transportation shall, under the direction and control of the secretary of transportation, perform all the functions of the former state highway commission created by chapter 31–2....

Howard argues that these positions are "obviously executive in nature, and inherently involve the exercise of discretion." However, PEPL coverage is extended to "all member public entities of the state and their officers and employees." No exception is made for "executive" employees. *See* SDCL 3–22–1(5), which provides PEPL's definition of "employee" as:

> all current and former employees and elected and appointed officers of any public entity whether classified, unclassified, licensed or certified, permanent or temporary whether compensated or not. The term includes employees of all branches of government including the judicial and legislative branches and employees of constitutional, statutory and executive order boards, commissions and offices. The term does not include independent contractors[.]

[¶ 48.] Howard's status as Secretary of DOT and Director of Highways does not necessarily mean that *all* of his functions and duties are discretionary, and the trial court erred in so ruling. *See Bryant*, 457 N.W.2d at 470–71:

> While all duties of county commissioners are important, this particular function of maintaining secondary roads has been twice ascribed to them by the legislature. We are not passing judgment on another branch of government, but merely requiring that Butte County Commissioners carry out their duty so prescribed by the legislature.

*See also State Tort Liability* § 118, at 130:

> [W]hether the acts giving rise to a complaint are discretionary or ministerial is a

---

**17.** SDCL 31–2–9 was repealed by S.L. 1996, ch. 20, § 15, in the Legislature's reorganization of

DOT.

factual question depending on the nature of the act and not the care with which it is performed, *or the rank or identity of the actor* [.]

(Emphasis added); *United States v. Varig Airlines,* 467 U.S. 797, 813, 104 S.Ct. 2755, 2764, 81 L.Ed.2d 660, 674, *reh'g denied,* 468 U.S. 1226, 105 S.Ct. 26, 82 L.Ed.2d 919 (1984):

> First, it is the nature of the conduct, rather than the status of the actor, that governs whether the discretionary function exception applies in a given case.... Thus, the basic inquiry concerning the application of the discretionary function exception is whether the challenged acts of a Government employee—whatever his or her rank—are of the nature and quality that Congress intended to shield from tort liability.

*Accord Robertson v. City of Topeka,* 231 Kan. 358, 644 P.2d 458, 462 (Kan 1982) (stating that focus should not be on status of employee).[18]

[¶ 49.] There can be no doubt that Howard performs many discretionary tasks in the course of his employment. However, SDCL 1–44–14 and 31–2–9 indicate that Howard was responsible for executing DOT policies and statutory duties set forth in SDCL 31–5–1, 31–28–6, and 31–32–10 on Interstate 29. The majority opinion reflects a complete misunderstanding of this position and of the correct test. At ¶ 32, it states:

> If Howard is to be held liable, all other public servants exercising similar executive powers will also be liable. This arrives at a result where all are doing ministerial duties in the executive branch of state government with the sole exception being the Governor.

This is nonsense. The test is *not* whether a public servant is exercising an "executive," "judicial," or "legislative" power. The test is whether the task is ministerial or discretionary. Under the majority's "test," Howard

and the Governor would be protected under sovereign immunity even when negligently operating a motor vehicle, a purely ministerial task. We know better, and *Kyllo,* 535 N.W.2d at 903, is settled law that dictates the opposite result.

It is inconceivable that driving a motor vehicle is anything other than a ministerial function. Regardless of state employment, Employees still owed the same duty of care to drive safely as any other driver not so employed. Employees' claimed immunization from suit does not extend to negligent individuals in any other sector of employment. The legislature cannot extend it to negligent individuals who work for the state. Although we agree that state employees performing discretionary, "policy making" functions should be covered by immunity for the consequences resulting from their decisions, that is simply not the case here. Instead, what exists is injury resulting from the alleged negligent operation of a motor vehicle.

[¶ 50.] The duties imposed on Howard, i.e., to *execute* DOT policies and directives—not to formulate them—are ministerial duties. *See Kyllo,* 535 N.W.2d at 901 n.9; *see also State Tort Liability* § 120, at 132–33:

> [A] ministerial act is defined as absolute, certain, and imperative, involving merely the execution of a specific duty arising from fixed designated facts or the execution of a set task imposed by a law prescribing the time, mode, and occasion of its performance with such certainty that nothing remains for judgment or discretion, being a simple, definite duty arising under and because of stated conditions and imposed by law. A ministerial act envisions direct adherence to a governing rule or standard with a compulsory result. It is performed in a prescribed manner without the exercise of judgment or discretion as to the propriety of the action. In short, once it is determined that the act should be performed, subsequent duties may be considered ministerial. If there is a readily ascertainable standard by which the action of the government servant may be measured, whether that standard is writ-

---

18. Since Howard's duties, not his rank or status, provide the basis upon which the ministerial / discretionary determination is made, the size of DOT's budget and the number of its employees (facts supplied not by Howard but by the majority) are equally immaterial.

ten or the product of experience, it is not within the discretionary function exception.

[¶ 51.] This court has consistently held that "an unexcused violation of a statute enacted to promote safety constitutes negligence per se." *Thompson*, 1997 SD 103 at ¶ 16, 567 N.W.2d at 393 (citations omitted). Whether Howard breached one or more of these statutory duties by failing to enforce them through DOT employees and agents, and if so, whether the breach was the proximate cause of Hansen's injuries constitute questions for the factfinder. *Cf. Olson v. Tri-County State Bank*, 456 N.W.2d 132, 135 (S.D.1990):

> Whether a principal will be held liable for the conduct of an agent is determined by the nexus between the agent's employment and the activity which actually caused the injury. Liability will be imposed upon the principal when the nexus is sufficient to make the resulting harm foreseeable. In other words, if the agent's employment puts him in a position where his harmful conduct would not be so unusual or startling that it would be unfair to include the loss caused by the injury among the costs of the employer's business, then the principal is liable for the injury.

(Citation & internal quotation omitted).

[¶ 52.] Violation of the statute "alone is not sufficient to render [defendant] liable to the plaintiff. Before [defendant] may be held to respond in damages it must further appear that [his] violation of the duty placed on [him] by this rule was the proximate cause of plaintiff's injury. The burden of establishing this is on the plaintiff." *Blakey v. Boos*, 83 S.D. 1, 8, 153 N.W.2d 305, 309 (1967) (citation omitted); *accord Musch v. H–D Coop., Inc.*, 487 N.W.2d 623, 625–26 (S.D.1992):

> With regard to the proximate cause issue, this court has recognized that the mere violation of a statute is insufficient to support an action for damages. Rather, a

plaintiff must show that the violation of a statutory duty was the proximate cause of his injury to support a recovery in negligence. *Serles v. Braun*, 79 S.D. 456, 113 N.W.2d 216 (1962); *Zeller v. Pikovsky*, 66 S.D. 71, 278 N.W. 174 (1938). In *Leslie v. City of Bonesteel*, 303 N.W.2d 117, 119 (S.D.1981), we stated: "For proximate cause to exist, 'the harm suffered must be found to be a foreseeable consequence of the act complained of.... The negligent act must be a substantial factor in bringing about the harm.' *Williams v. United States*, 450 F.Supp. 1040, 1046 (D.S.D. 1978)."

(Emphasis & alterations omitted). Questions of proximate cause are for the jury in "all but the rarest of cases." *Bauman v. Auch*, 539 N.W.2d 320, 325 (S.D.1995); *Nelson v. Nelson Cattle Co.*, 513 N.W.2d 900, 903 (S.D. 1994); *Holmes v. Wegman Oil Co.*, 492 N.W.2d 107, 114 (S.D.1992).

[¶ 53.] As noted, on a motion to dismiss, the court accepts the pleader's description of what happened along with any conclusions reasonably drawn therefrom. *Schlosser v. Norwest Bank South Dakota*, 506 N.W.2d 416, 418 (S.D.1993). Hansen states that she drove into an unmarked, unguarded hole in a bridge construction project. Statutes mandate that proper signs and guards be employed over defects which endanger public travel. The doctrine of sovereign immunity does not bar a cause of action against state employees for their failure to erect a sign and a guard over a defect in the road because placement of such signs and guards is a ministerial duty, the negligent exercise of which is not protected by sovereign immunity. By alleging that Howard failed to comply with one or more of his statutorily imposed duties, Hansen states a viable legal theory of liability, precluding a motion to dismiss her case against Howard.[19] *See Thompson*, 1997 SD 103 at ¶ 7, 567 N.W.2d

---

**19.** Hansen also claims that she properly invoked the doctrines of common law negligence and res ipsa loquitur in her complaint. However, the duty to :

> protect the public from injury occasioned by highways, culverts or bridges that are destroyed or out of repair is not imposed by the doctrine or rules of common-law negligence. It is a statutory duty imposed by the provi-

sions of [forerunner to SDCL 31–32–10]. Accordingly its liability is determined by applying the standard of conduct imposed by statute rather than the standard of conduct of a reasonably prudent person.

*Lipp v. Corson County*, 76 S.D. 343, 346, 78 N.W.2d 172, 174 (1956) (citations omitted). Additionally, res ipsa loquitur is simply a rule of evidence.

at 390 ("Thompson advances at least three legal theories which may support his cause of action. We need not, and do not, decide whether he will ultimately succeed on any of these theories."); *see also Schlosser*, 506 N.W.2d at 418:

> Pleadings should not be dismissed merely because the court entertains doubts as to whether the pleader will prevail in the action as this is a matter of proof, not pleadings. The rules of procedure favor the resolution of cases upon the merits by trial or summary judgment rather than on failed or inartful accusations.

The question is "whether in the light most favorable to the plaintiff, and with doubt resolved in his or her behalf, the complaint

It is not an issue to be pleaded in the complaint nor need it be "noticed" by specific designation to the adverse party at pretrial or at trial for it is neither a cause of action nor a ground for recovery.

states any valid claim of relief." *Id.* Here, the answer is that Hansen's complaint states a valid claim of relief against Howard for failure to comply with one or more of his statutorily imposed ministerial duties. Therefore, there is coverage under PEPL. Whether she could ultimately succeed on this claim presents questions not capable of resolution by a motion to dismiss.

[¶ 54.] Therefore, I dissent because the order granting the motion to dismiss Howard should be reversed and remanded for trial.

*Shipley v. City of Spearfish*, 89 S.D. 559, 561, 235 N.W.2d 911, 913 (1975) (citations omitted).